**LAW, SNAKARD, BROWN & GAMBILL, a professional corporation, Appellant,**

**v.**

**William BRUNETTE and Patchett's Bus & Transportation Company, Appellees.**

**No. 7567.**

Court of Civil Appeals of Texas, Beaumont.

May 9, 1974.

Rehearing Denied May 30, 1974.

Gibbins & Spivey, Austin, for appellant.

Stayton, Maloney, Hearne, Babb & Cowden, Austin, for appellees.

DIES, Chief Justice.

On February 2, 1970, defendant (appellee) William Brunette, a California resi-

dent, executed a promissory note to Ray Cowan. The note, a "Texas Standard Form," was payable in Austin, Texas, and signed by defendant Brunette in Texas.

On February 4, 1970, defendant Patchett's Bus & Transportation Company (appellees) executed a promissory note at Stockton, California, payable at Austin, Texas. This note was likewise signed by defendant Brunette, president of the bus company, and sent by mail to Texas. The bus company is a California corporation.

Cowan endorsed both notes to plaintiff corporation—Law, Snakard, Brown & Gambill (appellant)—in consideration for legal fees. Plaintiff brought this suit on both notes in Travis County, Texas, and obtained service against both defendants pursuant to Art. 2031b, § 4, Vernon's Ann. Civ.St. Both defendants filed a Special Appearance, as provided by Rules of Civil Procedure, rule 120a, to present a motion to the jurisdiction, contending the Texas court was without jurisdiction to hear the case. The trial court agreed, sustained both pleas to the jurisdiction, and dismissed the cause, from which order plaintiff perfects this appeal.

The testimony shows, in addition to what has been set out, that defendant "Brunette came to Texas on many occasions and I [Cowan] handled all of his finances from about 1969 through sometime in '71, and he was there at many times, and we discussed several notes as well as those two." The testimony reveals that Brunette and Cowan met in the State of Texas "[a]t my office on Anchor Lane." We have no direct testimony of the residence of Cowan. It is well to state here that Cowan testified the reason the bus company note was signed in California and mailed to Texas is "because you have to have your secretary's signature."

The only question presented here is whether under these facts is either defendant amenable to suit in the State of Texas?

Portions of Art. 2031b follow:

"Sec. 3. Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out within this State shall be deemed equivaof such business done in this State, the act or acts of engaging in such business lent to an appointment by such foreign corporation, joint stock company, association, partnership, or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.

"Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."

The trial court's Conclusions of Law follow:

"1. Jurisdiction over the defendants William Brunette and Patchett's Bus & Transportation Company is not maintainable by the Courts of this State because there is neither pleading nor proof in the record to show that Ray Cowan, the party with whom both defendants entered into contracts in February, 1970, was a resident of the State of Texas as of

February, 1970, or at any other time, as required to show that the defendants were doing business in this State as defined by Article 2031b, Section 4, V.A. T.S.

"2. Jurisdiction over the defendant Patchett's Bus & Transportation Company is not maintainable by the Courts of this State because to do so would offend traditional notions of fair play and substantial justice, because the record does not show the existence of those minimum contacts as are required to maintain jurisdiction over this defendant by the Fourteenth Amendment to the United States Constitution.

"3. Jurisdiction over the defendant William Brunette is not maintainable by the Courts of this State because to do so would offend traditional notions of fair play and substantial justice, because the record does not show the existence of those minimum contacts as are required to maintain jurisdiction over this defendant by the Fourteenth Amendment of the United States Constitution."

In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the State of Washington sued Shoe Company in its courts to recover unpaid contributions to the state unemployment compensation fund exacted by state statutes. Shoe Company was a Delaware corporation, had no office in Washington, and made no contracts either for sale or purchase there. It maintained no stock of merchandise in Washington, and made no deliveries of goods in intrastate commerce. It did employ eleven to thirteen salesmen in Washington, under the direct supervision of sales managers in St. Louis. The authority of the salesmen was limited to exhibiting their samples and soliciting orders from prospective buyers at prices and on terms fixed by Shoe Company. The orders were shipped f. o. b. from points outside Washington.

In holding Shoe Company amenable to the courts of Washington, the Court said:

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (326 U.S. at 316, 66 S.Ct. at 158)

The Court in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), further expanded this doctrine. There a California resident purchased a life insurance policy from the Empire Mutual Insurance Company, an Arizona corporation, in 1944. In 1948 International agreed with Empire to assume its insurance obligations. International then mailed a reinsurance certificate to Franklin in California offering to insure him in accordance with the terms of the policy he held with Empire, which he accepted. From that time until his death in 1950, he paid the premiums by mail from his California home to International's Texas office. Neither Empire nor International ever had any office or agent in California, and International had never solicited or done any insurance business in California apart from the policy there involved. The Court said:

"Since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, ch V. More recently in International

Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, the Court decided that 'due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain *minimum* contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' Id. 326 U.S. at 316 [66 S.Ct. 154].

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

"Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. Cf. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L. Ed. 1091; Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097; Pennoyer v. Neff, 95 U.S. 714, 735, 24 L.Ed. 565, 573. [Footnote omitted] The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process. Cf. Travelers Health Asso. v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154. There is no contention that respondent did not have adequate notice of the suit or sufficient time to prepare its defenses and appear." (355 U.S. at 222–224, 78 S.Ct. at 200)

Our Texas Supreme Court in O'Brien v. Lanpar Company, 399 S.W.2d 340 (1966), reviewed this situation: the president of Lanpar (a Texas corporation) went to Chicago and employed O'Brien as the corporation's attorney to prosecute an action on its behalf in Illinois. Lanpar later refused to pay all the fee. O'Brien filed suit in Illinois. Process was served on Lanpar at its place of business in Dallas. Lanpar did not defend and O'Brien obtained a default judgment in Illinois. The Court (Pope, J.) said:

"It is our opinion that the Illinois court had jurisdiction to render the in personam judgment and it is entitled to full faith and credit. . . . The validity of the Illinois judgment is controlled by the law of Illinois but must satisfy the due process clause. . . . The action was one which arose out of and was a part of the very contact for which Lanpar's agent visited Illinois. . . . The contact and contract were made in Illinois." (399 S.W.2d at 341, 343)

In Eyerly Aircraft Co. v. Killian, 414 F. 2d 591 (5th Cir. 1969), a child was injured on an amusement ride in Dallas, which was manufactured in Oregon approximately twenty years earlier. Plaintiff's cause of action arose out of an alleged defect in the ride which the defendant corporation had neither sold nor serviced in Texas. Eyerly, the manufacturer, had no contact with the ride since introducing it into interstate commerce by selling it to a Chicago amusement show some twenty years ago. The Court said: "Our question in this diversity case is whether the Texas 'Long Arm' statute has the stretch, within constitutional permissibility, to embrace the products liability action before us. We find both the stretch and the embrace."

See Standard Leasing Co. v. Performance Systems, Inc., 321 F.Supp. 977 (N.D. Tex.1971), where defendant Tennessee Corporation agreed to pay to plaintiff at its office in Amarillo, Texas, assigned lease rentals as they became due. The court found this satisfied Art. 2031b, § 3, set out, supra, and met the constitutional test.

In Uvalde Rock Asphalt Co. v. Consolidated Carpet Corp., 457 S.W.2d 649 (Tex. Civ.App., Beaumont, 1970, error, ref. n. r. e.), a Texas corporation sued an Arizona corporation upon a sworn account, obtaining service under Art. 2031b. The Arizona corporation contended it was not amenable to in personam jurisdiction. The Court disagreed.

In McKanna v. Edgar, 380 S.W.2d 889 [Tex.Civ.App., Austin, 1964, reversed, 388 S.W.2d 927 (Tex.Sup.1965)], the court upheld a judgment obtained in Travis County against a California resident who had executed a note payable in Texas. Service on the non-resident had been obtained in pursuance to Art. 2031b. The Supreme Court reversed on the ground that the record failed to show the existence of the conditions which, under the statute, are a prerequisite to serving a party by serving the Secretary of State. The contention was made that Art. 2031b was unconstitutional, which the Supreme Court felt was unnecessary in that case to answer. For a thorough compilation of cases involving this statute, see Modine Mfg. Co. v. North East Independent Sch. Dist., 503 S.W.2d 833, 837 (Tex.Civ.App., Beaumont, 1973, error ref. n. r. e.).

■ We think it is fair to comment that since the days of Pennoyer v. Neff, 95 U. S. 714, 24 L.Ed. 565 (1877), the courts have recognized that modern commerce is much less inhibited by state boundaries and distance. And, while it is still inconvenient for a party to defend a suit out of state, this inconvenience is likewise less today. Here we have a situation not only where both notes were payable in Texas, but where one of them was signed in Texas; and discussions leading up to their execution were held in Texas. The one executed in California was so the secretary of the corporation could sign it. Appellee Brunette came to Texas many times from 1969 to 1971, and Cowan (the payee of the note) handled the finances.

We believe these are sufficient contacts to hold both Brunette and Bus Company amenable to suit in Texas.

■ Appellees contend there is no proof Cowan was a resident of Texas. This burden (to prove non-residence) was on appellees. Roquemore v. Roquemore, 431 S.W. 2d 595, 600 (Tex.Civ.App., Corpus Christi, 1968, no writ) states:

"Special appearance to challenge jurisdiction in Texas is a plea in abatement and such plea is not favored by the courts. [citing cases] The party pleading in abatement has the burden of proof."

Taylor v. American Emery Wheel Works, 480 S.W.2d 26 (Tex.Civ.App., Corpus Christi, 1972, no writ). See also 42 Tex. L.Rev. 279 (1964).

We sustain appellant's points of error and the judgment of the trial court is reversed and remanded.