**ROSEMONT ENTERPRISES, INC., Appellant,**

v.

**William R. LUMMIS, Temporary & Co-Administrator, Appellee.**

**No. A2244.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Feb. 13, 1980.

Rehearing Denied March 5, 1980.

Eliot Tucker, Mandell & Wright, John E. Bagalay, Jr., Houston, for appellant.

R. F. Wheless, Jr., Houston, for appellee.

Before BROWN, C. J., and MILLER and JUNELL, JJ.

MILLER, Justice.

The threshold questions in this action to enforce the terms of a promissory note are whether the probate court of Harris County had in personam jurisdiction of the debtor, a Nevada corporation with offices in New York and authority to do business in California as well, and if so, did it have subject matter jurisdiction? We hold that the court had both, that it decided other questions involved in the judgment correctly, and thus we affirm.

On July 2, 1965, Howard Hughes granted to Rosemont Enterprises, Inc. the exclusive right to publish his biography or otherwise to exploit his name or life-history. Rosemont was incorporated in Nevada for that purpose on September 16, 1965. Its original three shareholders were two executives of the Hughes Tool Company and Chester Davis, general counsel of that company. Under the contract, Rosemont agreed to pay Hughes 60% of the net proceeds, as defined, derived by Rosemont from the use of the rights granted it.

Aside from the issue of capital stock, Rosemont financed its operations from July 2, 1965, to September 9, 1974, by a series of loans from the Texas Commerce Bank, N. A., in Houston, Texas. These loans were guaranteed by the Hughes Tool Company, which later changed its name to Summa Corporation, and were arranged by a Hughes Tool Company executive, Raymond Holliday, who resided in Houston. By September 6, 1974, the appellant owed the bank $250,000.00 and had paid approximately $130,000.00 in interest. This interest was apparently financed by unsecured borrowings from an unrevealed source.

In order to reduce the interest charges and to lessen Summa Corporation's income tax exposure, on September 9, 1974, the

decedent, Howard Hughes, transferred to appellant's account in the Texas Commerce Bank $500,000.00 in exchange for a note of like amount dated September 6, 1974, due on or before September 6, 1975. The note provided for interest at the prime rate charged by the Texas Commerce Bank, and was payable at that bank. $265,091.33 of the proceeds were used to pay principal and interest on the notes due the bank, and the balance remained on deposit at the bank. On September 12, 1975, Rosemont purchased a certificate of deposit for $225,-000.00 from the Texas Commerce Bank, and left the certificate with the bank for safekeeping.

Hughes died on April 5, 1976, without having attempted to collect either principal or interest on the note. Appellee Lummis was appointed Temporary Co-Administrator in Texas of the Hughes estate by the probate court of Harris County. He filed suit in that court seeking recovery on the note, and also sought a temporary injunction against Texas Commerce Bank restraining the bank from releasing funds of Rosemont held by the bank. Appellee additionally requested a writ of garnishment of the approximately $245,000.00 held by the bank for Rosemont's account.

Service was had on the Secretary of State, who notified appellant by mail addressed to its New York office. The day before the hearing on the temporary restraining order, Chester Davis, secretary-treasurer of appellant, wired the court stating that he had just received copies of the petition, asking for a delay in the hearing. This was granted. Rosemont then filed a special appearance and motion to dismiss in which it contested the court's personal jurisdiction over it, the authority of Lummis to bring the suit, and the propriety of the issuance of an injunction. The court ruled in appellee's favor on Rosemont's motion, and later granted summary judgment on the $500,000.00 note and directed the issuance of a writ of garnishment.

I.

In its first point of error, appellant levels a three-pronged attack on the probate court's ruling that it had personal jurisdiction of appellant. It alleges service of process was inadequate; the Texas "long-arm" statute, Tex.Rev.Civ.Stat.Ann. art. 2031b (Vernon 1964), does not authorize the suit; and Rosemont had insufficient contacts with Texas to satisfy federal and state due process standards.

Appellee alleged in its original petition that "Defendant, Rosemont Enterprises, Inc., is a Nevada Corporation doing business in Texas and having assets located in the State of Texas and may be served by serving the Secretary of State of Texas, pursuant to article 2031b." Appellant correctly points out that such petition fails to allege that it does not maintain a place of regular business in Texas nor a designated agent for service.[1] It urges that such failure is fatal to the process, and cites *McKanna v. Edgar*, 388 S.W.2d 927 (Tex.1965), which held that the *record* must reflect these conditions. As pointed out in *Collins v. Mize*, 447 S.W.2d 674, 675 (Tex.1969), however, "[t]his court's opinion in *McKanna v. Edgar*, 388 S.W.2d 927 (Tex.1965) is inapplicable, since the appeal there was on a writ of error following a *default judgment*. The

---

1. Art. 2031b reads, in pertinent part, as follows:

    Sec. 3. Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership, or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.

particularity of pleading required to sustain a *default judgment* against a direct attack was a critical consideration in that case." (Emphasis added). Appellant here does not deny that it received actual notice, and it has vigorously defended the case.

■ Appellant's telegram to the court asserted that Rosemont had "no pertinent contact with Texas other than the deposit of funds with the Texas Commerce Bank and its only office is in New York." The missing allegations were thus supplied to the record. Further, appellee's amended complaint filed in the federal district court after removal of the case thereto was served on Rosemont by service upon the Secretary of State and notice to Rosemont as provided in article 2031b. In addition, after remand to the probate court, appellee filed its amended petition which was served upon appellant by service upon the Secretary of State and notice to Rosemont. Both of these petitions contained the missing allegations.

■ The Supreme Court of the United States has pointed out in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 873 "the . . . words of the Due Process Clause . . . at a minimum require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." These minimum constitutional standards have been adequately met in the case at hand. Rosemont's complaint of inadequacy of notice is ill-founded.

Appellant's next attack is on the statutory foundation of the court's in personam jurisdiction over the defendant. Article 2031b(4) provides as follows:

For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or

otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State. Appellant singles out the phrase "with a resident of Texas" and argues that such phrase excludes transactions to be performed in the state where both parties are non-residents of the state.

Both parties contend that the decedent, Hughes, was not a resident of Texas. While we note parenthetically that on December 6, 1977, a jury, in a Texas case now on appeal, found Hughes was a Texas domiciliary, such determination is not necessary to finding in personam jurisdiction in this case.

■ Appellant cites *Law, Snakard, Brown & Gambill v. Brunette*, 509 S.W.2d 671 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.) as authority for the argument that no single contract entered into between non-residents may be the basis of a contested suit within the state. That case, however, in finding that the defendant was amenable to suit in Texas, pointed out that the burden is on the defendant to show that it is not amenable to the long arm process— not that one of the parties must be a resident of Texas. Our supreme court has ruled that "Article 2031b reaches as far as the federal constitutional requirements of due process will permit." *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977). The phrase, "and without including other acts that may constitute doing business" in 2031b(4) expands the scope of in personam jurisdiction to the limits of the federal constitution. See Thode, *In Personam Jurisdiction; Article 2031b, the Texas "Long Arm" Jurisdiction Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere*, 42 Tex.L.Rev. 279, 307–308 (1964). We hold that if the transaction at issue meets the constitutional requirement of due process a suit thereon is justiciable in Texas even though neither party is a resident of the state.

■ Appellant's third attack on the personal jurisdiction of the court below is

that due process considerations preclude the exercise of jurisdiction in this case. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) makes it abundantly clear that the test of state court in personam jurisdiction is whether it is reasonable in the context of our federal system of government to require the defendant to defend a particular suit in the state where the suit is brought. The criterion of minimum contacts consistent with traditional notions of fair play and justice developed by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its "progeny", *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) has been interpreted in Texas to require consideration of several factors: (1) there must be a purposeful act or consummation of some transaction in the forum state by the non-resident defendant, (2) the cause of action must arise from, or be connected with, such act or transaction, (3) the forum state must have some special interest in granting relief, and (4) the relative convenience of the parties must be considered. *O'Brien v. Lanpar Company*, 399 S.W.2d 340 (Tex.1966); *Computer Synergy Corp. v. Business Systems*, 582 S.W.2d 573 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

█ In the present case, appellant had almost constant contact with the Texas Commerce Bank during the period extending from October 7, 1965, to September 9, 1974. In that period Rosemont signed original or renewal notes at least 42 times, these notes being payable to the bank in Houston. Each renewal required correspondence with the bank at its Houston office. It would be difficult for Rosemont to argue that a default in its obligation during that period would not have subjected it to a suit in Texas by the bank.

The note to decedent Hughes was apparently negotiated on the advice of a Texas attorney, Mickey West, with a Texas executive of Summa Corporation, Raymond Holliday, and was payable in Texas; it was funded by Hughes by a transfer of funds from his account in the Texas bank to appellant's account in that same bank; the proceeds which were not used to discharge the indebtedness to the Texas bank were mainly invested in a certificate of deposit issued by the bank. The principal tangible assets of the appellant corporation were that certificate of deposit which was held in safekeeping in Texas by the bank and its bank account at Texas Commerce Bank. The bulk of appellant's income in its fiscal year ended July 30, 1976 ($10,441.00 of a total of $10,880.00) was derived from interest on the Texas certificate of deposit. It is interesting to note that in its two fiscal years prior to the purchase of the certificate Rosemont had no gross income at all.

Rosemont is a corporation chartered in Nevada with its offices in New York. Lummis has been appointed and has qualified in the State of Texas, where there is a pending administration of at least a portion of the Estate of Howard R. Hughes, Jr. The custodian of the note and the depository of appellant's funds and principal tangible assets is located in Texas. Other witnesses, such as Hughes' accountant, resided in Texas. There is no doubt that, on balance, the parties were not more inconvenienced by trial of the suit in Texas than in any other state.

With its interest in the orderly administration of the Texas assets, at least, of the Hughes estate, it is evident that Texas has a special interest in the determination of this litigation.

For all of the above listed reasons, we hold that the "minimum contacts" test of *International Shoe* and its progeny has been more than met, and appellant Rosemont is subject to in personam jurisdiction of Texas courts. Appellant's first point of error is overruled.

The court below held that Davis' telegram to the court on February 10, 1977, constituted an appearance in the proceed-

ings. Inasmuch as the telegram did not comply with Rule 120a, Tex.R.Civ.P., which provides for a special appearance to contest the jurisdiction of the court, the court concluded the communication was a general appearance in this cause. Appellant vigorously contests such finding. The question, though interesting, is not necessary of decision in view of our holding that Rosemont had sufficient contacts with Texas to satisfy the requirements of personal jurisdiction by a Texas court.

## II.

Appellant next questions the probate court's jurisdiction of the subject matter of this suit. It argues that the statute creating Probate Court Number Two provides that "[t]he practice and procedure of Probate Court Number Two of Harris County shall be the same as that provided by law generally for the county courts of this state", Tex.Rev.Civ.Stat.Ann. art. 1970–110a.2, § 2 (Vernon Supp.1965 to 1979), that county courts in general have no jurisdiction of matters involving an amount in controversy in excess of $1,000.00, Tex.Rev.Civ. Stat.Ann. art. 1950 (Vernon 1964), and that, a fortiori, Probate Court Number Two has no jurisdiction to hear a $500,000.00 law suit.

Tex.Prob.Code Ann. § 5 (Vernon Supp. 1978–79) provided, in part, at the date of trial:

(d) All courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate, including but not limited to, *all claims by or against an estate*, all actions for trial of title to land incident to an estate and for the enforcement of liens thereon incident to an estate, . . . and actions to construe wills . . . . (Emphasis added).[2]

Appellant argues that this section of the probate code does not apply to property

that has not been determined to belong to the estate, and "the very nature of the underlying lawsuit is to determine whether the $500,000 is owed to the estate."

It cannot be denied that when the decedent advanced $500,000.00 to Rosemont, he acquired a claim of some sort against that corporation. That claim, whether absolutely due on September 6, 1975, or if only a participation in future profits, is property of the estate. Appellant's argument must therefore fall on this ground alone.

The larger question, however, is whether the probate code allows an executor or administrator of an estate to sue on a note in probate court where the claim exceeds the jurisdictional limit of the county court. We hold that it does. The supreme court of Texas, in holding that an executor could sue in a probate court for conversion of funds allegedly belonging to an estate, laid down the following rule: "The determination of a decedent's right to probate assets necessarily falls within the scope of being an action 'incident to an estate.' Furthermore, the outcome of [the] suit will have a direct bearing on the assimilation, collection, and distribution of [the decedent's] estate." *English v. Cobb*, 593 S.W.2d 674 (Tex.1979).

Under the statute as interpreted by our supreme court it is clear that the probate court had subject matter jurisdiction of this cause. Appellant's second point of error is overruled.

## III.

Appellant's third point of error asserts that Appellee Lummis, as temporary co-administrator, lacked authority to file suit to collect the note because (1) the probate court did not give him such power nor does the probate code authorize it, and (2) the Nevada administrator alone had the author-

---

**2.** The quoted language has been changed, effective August 27, 1979, to the following:

All courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate.

ity to sue because the situs of the note, since it is personal property, is Nevada, the supposed domicile of the decedent.

■ In support of the first premise, appellant urges that the powers of temporary administrators include only those powers "specifically expressed in the order of the court appointing them, and as may be expressed in subsequent orders of the court." Tex.Prob.Code Ann. § 133 (Vernon 1956). This argument overlooks the probate court's order of August 18, 1976, which granted the temporary co-administrator "the same powers, authorities and duties conferred on permanent administrators under the Texas Probate Code, other than the power to make distribution to any beneficiary of the estate . . . ." The argument is thus without foundation.

■ Appellant cites no cases in support of his assertion that the Nevada administrator had exclusive right to sue on the note. We have found none which so hold. It is settled law that a foreign administrator or executor, as such, cannot sue or be sued in Texas courts. *Eikel v. Bristow Corporation*, 529 S.W.2d 795 (Tex.Civ. App.—Houston [1st Dist.] 1975, no writ). We have concluded that jurisdiction of this suit lies in Texas courts; and the note was physically located and payable in Texas. It must therefore follow that the Texas representative of the estate had power to sue on the note in Texas. Appellant's third point of error is overruled.

■ In its fourth point of error, appellant alleges that appellee was not entitled to a restraining order as a matter of law. During the course of the litigation, Rosemont agreed to extension of this restraining order several times, and, in fact, until the final judgment, the restraining order was in effect by agreement. Whether or not Rosemont could have, by motion to the probate court· or by appellate action, had the restraining order dissolved, the time is long since past to complain of this action of the probate court. The question being moot, appellant's fourth point of error is overruled.

■ Appellant's fifth point of error complains that the probate court erred in granting appellee's motion for summary judgment. In support thereof, appellant alleges that the affidavit of Chester Davis raises a fact issue in that, it is asserted, the subject note was not intended to be effective until the publication of the Hughes biography, and, therefore, was conditionally delivered. We agree with appellant that summary judgment is a harsh remedy. It is to be strictly construed against the movant, and summary judgment should be granted only if the record establishes that as a matter of law there is no genuine issue as to any material fact in the case. *Taylor v. Fred Clark Felt Company*, 567 S.W.2d 863 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n. r. e.).

The promissory note is dated September 6, 1974, and provides, in pertinent part:

On or before one (1) year after date, for value received, ROSEMONT ENTERPRISES, INC., a Nevada corporation ("debtor") promises to pay to the order of HOWARD R. HUGHES . . . the sum of FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00) with interest . . . .

It is not contested that Hughes loaned Rosemont $500,000.00 in cash which amount was evidenced by the note. The corporate tax returns of Rosemont for the years ending June 30, 1975, 1976, and 1977 each showed a liability of $500,000.00, which Rosemont's secretary-treasurer, Davis, identified as being the subject obligation. This obligation is listed in the space entitled "Mtges., notes, bonds payable in less than 1 yr." Rosemont's contention is simply that the note was not intended to become due until after the publication of the Hughes biography. This contention is, therefore, that a parol provision, rather than the express written terms of the agreement is to prevail.

Under the parol evidence rule a prior or contemporaneous agreement that contradicts the express provisions of a written instrument may not be shown by extrinsic evidence. *Sheppard v. Citizens Nat. Bank of Austin*, 567 S.W.2d 613 (Tex.Civ. App.—Austin 1978, writ ref'd n. r. e.), *Kuper v. Schmidt*, 161 Tex. 189, 338 S.W.2d 948 (1960). Appellant's argument is thus foreclosed. Appellant has not raised a material issue of fact, and its fifth point of error is overruled.

Appellant's sixth and last point of error is that the court below erred in ordering the issuance of a writ of garnishment. Appellant urges that the affidavit signed by Appellee Lummis in support of appellee's petition in the probate court did not disclose on its face his authority even though the petition was styled "WILLIAM R. LUMMIS, TEMPORARY CO–ADMINISTRATOR VS. TEXAS COMMERCE BANK, N. A. AND ROSEMONT ENTERPRISES, INC." Appellant cites *Gex v. Texas Company*, 337 S.W.2d 820, 828 (Tex.Civ. App.—Amarillo 1960, no writ) which held "[that] an affidavit made on behalf of another in a judicial proceeding should disclose *in the record* or affidavit the affiant's authority." (Emphasis added). Lummis' authority is amply disclosed *in the record*. Rule 658 of the Texas Rules of Civil Procedure provides only that "[s]uch application shall be supported by affidavits of the plaintiff, his agent, his attorney, or other person having knowledge of relevant facts." Appellee has complied with this rule; appellant's sixth point of error is overruled.

All points of error having been overruled, the judgment is affirmed.