Stanley R. FIMBERG, Appellant,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity, Appellee.**

No. 06–93–00064–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 14, 1994.

Decided May 4, 1994.

Opinion Overruling Motion for Rehearing June 1, 1994.

David W. Shuford, Shuford & Associates, Dallas, for appellant.

Stephen G. Scholl, H. Fred Cook, Hirsch & Westheimer, P.C., Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Stanley R. Fimberg appeals from a summary judgment entered in favor of the Federal Deposit Insurance Corporation, in its corporate capacity. The FDIC sued Fimberg, seeking money due on a promissory note executed by Winterset Apartments, Ltd., which had declared bankruptcy and of which Fimberg was general partner.

Fimberg contends that the trial court erred in granting summary judgment because the FDIC did not establish that it owned the note, because the FDIC did not establish that Fimberg should be held personally liable on the note, because the bankruptcy plan of reorganization settled payment of the note, and, generally, because genuine issues of material fact exist and the FDIC failed to establish its right to judgment as a matter of law.

## FACTS

On November 11, 1983, Winterset Apartments, Ltd. executed a promissory note payable to the Harris County Housing Finance Corporation for $8,500,000. Winterset borrowed the money from Harris County Housing Finance Corporation to build an apartment complex which served as security for the loan. The note included a provision making the owner of the property, Winterset, personally liable for payment of the note to the extent that rents or income from the property went to Winterset after a default on the note, provided the holder of the note duly notified the owner and demanded the rents or income.

Harris County Housing Finance Corporation then endorsed the note to Interfirst Bank Houston, N.A., which subsequently merged with RepublicBank Houston, N.A. and became First RepublicBank Houston, N.A. A year later, the Comptroller of Currency declared First RepublicBank insolvent and appointed the FDIC as receiver. The FDIC then sold various assets of First RepublicBank, including the Winterset note, to JRB Bank, N.A., which changed its name to NCNB Texas National Bank, N.A.

On January 1, 1989, Winterset defaulted on the note, and, after receiving a demand letter from NCNB, Winterset began paying net receipts from the property to NCNB. Beginning November 1, 1990, Winterset stopped turning over the rent and income earned from the property. On May 15, 1991, Winterset filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code. According to the Winterset monthly owners report, the net income from the property during the period from November 1, 1990 to May 15, 1991 totalled $411,887.

On November 30, 1991, NCNB assigned the note to the FDIC. During the pendency of the bankruptcy proceedings, the FDIC attempted to work out an agreement for the payment of the debt by Winterset. In a letter agreement, Winterset agreed to a payment schedule for extinguishing the note. The letter agreement also spelled out that if Winterset failed to follow this schedule: "the FDIC would be free both to pursue foreclosure against the property and to pursue its pending litigation against Mr. Fimberg," the litigation being the suit now before the court. The agreement was attached to the reorganization plan and, therefore, according to the plan, it is a part of the entire agreement between the parties to the plan.

The bankruptcy court approved the reorganization plan on July 20, 1992, but Winterset failed to make the payments on the note as it had agreed. The FDIC then pursued the present litigation, and the trial court entered a summary judgment in its favor for $411,887, the total amount of net operating income earned from the property between November 1, 1990 and May 15, 1991.

In reviewing a summary judgment, the question is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiff's cause of action, but whether the proof establishes that the movant is entitled to summary judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Gonzalez v. Mission American Insurance Co.*, 795 S.W.2d 734, 736 (Tex.1990). Evidence favorable to the nonmovant will be taken as true and every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon*

*v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985). An appeals court should not consider evidence that favors the movant's position unless it is uncontroverted. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

## OWNERSHIP OF THE NOTE

Fimberg first contends that the FDIC failed to establish that it is the owner and holder of the note. The FDIC contends that its ownership of the note was proven by Shelley Valerius's affidavit, which had a copy of the note attached. In *Zarges v. Bevan*, 652 S.W.2d 368 (Tex.1983), the Texas Supreme Court held that, when a photocopy of a note is attached to the plaintiff's affidavit and, in that affidavit, the plaintiff swears that the copy is true and correct and that he or she is the lawful owner of the note, that affidavit is sufficient summary judgment proof that the plaintiff owns the note.

In her affidavit, Valerius swears that the attached copy of the note is true and correct. She also explains that she has personal knowledge of this fact because she works as an account specialist for AMRESCO Management, Inc., which manages assets owned by the FDIC, including those pertaining to Winterset. She additionally swears that the FDIC owns the note.

Fimberg attacks Valerius's affidavit by suggesting that it does not affirmatively demonstrate how she came to have personal knowledge of the facts to which she attests, that it does not demonstrate her qualifications to be able to identify the note, that it does not demonstrate what connection she has with the defendant, and that her statement regarding the ownership of the note constitutes a conclusion and thus is not proper summary judgment evidence.

Fimberg's arguments, however, fly in the face of established case law and the plain language of Valerius's affidavit. In *J.T.*

*Fulgham Co. v. Stewart Title Guar. Co.*, 649 S.W.2d 128 (Tex.App.—Dallas 1983, writ ref'd n.r.e.), the court held that, where the affiant stated in his affidavit that he was a vice president and agent for the plaintiff, personal knowledge was established so that the affiant's statement that the plaintiff was holder of the note and that a true and correct copy was attached sufficiently established that the plaintiff owned the note. *See also Fair Woman, Inc. v. Transland Management*, 766 S.W.2d 323 (Tex.App.—Dallas 1989, no writ) (court distinguished case from *Fulgham* because the affiant did not state her employment or her connection to the parties); *Sparks v. Cameron Emp. Credit Union*, 678 S.W.2d 600 (Tex.App.—Houston [14th Dist.] 1984, no writ) (affiant's job as collection manager was sufficient to give him personal knowledge of the facts alleged).[1]

Valerius's affidavit demonstrates how she came to have personal knowledge of the ownership of the note, and it demonstrates her connection to the parties wherein it states that she works as an account specialist for AMRESCO and that AMRESCO manages assets owned by the FDIC, including those pertaining to Winterset. The affidavit appears sufficient to fulfill the requirements of *Zarges* and *Fulgham* and establish ownership of the note by the FDIC.

Fimberg continues his attack on Valerius's affidavit by contending that it is insufficient because, in her deposition, Valerius admitted that she had no knowledge of the note prior to December 1991. Fimberg, however, cites no cases and makes no argument explaining why this admission would invalidate Valerius's statement that the FDIC owned the note on February 25, 1993, the date on which the affidavit was sworn. *See Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449, 452–53 (Tex.1978); *Trinity Universal Ins. Co. v. Fidelity & Cas. Co.*, 837 S.W.2d 202 (Tex. App.—Dallas 1992, no writ).

---

1. Although Fimberg does not complain that Valerius was not herself the plaintiff, as was the affiant in *Zarges v. Bevan*, 652 S.W.2d 368 (Tex. 1983), later case law suggests that it is sufficient for the affiant to have a strong enough connection with the plaintiff so as to have personal knowledge of the note's ownership. *See, e.g., J.T. Fulgham Co. v. Stewart Title Guar. Co.*, 649 S.W.2d 128 (Tex.App.—Dallas 1983, writ ref'd n.r.e.), *Sparks v. Cameron Emp. Credit Union*, 678 S.W.2d 600 (Tex.App.—Houston [14th Dist.] 1984, no writ).

The remainder of Fimberg's arguments on this point of error attack the FDIC's evidence regarding the various assignments or endorsements of the note. A careful, line-by-line review of Fimberg's brief, however, reveals that he has not specifically made any allegation regarding the genuineness of the endorsements. He simply attacks the validity of the affidavits produced by the FDIC to prove the chain of ownership without actually stating that the FDIC failed to prove the genuineness of the endorsements. Furthermore, Fimberg did not offer any summary judgment evidence suggesting that any of the endorsements were not genuine or that the FDIC did not own the note.

The FDIC sufficiently established its ownership of the note. This point of error is overruled.

### FIMBERG'S LIABILITY FOR THE NOTE

Fimberg next contends that he cannot be held personally liable for amounts due on the note. He bases this contention primarily on a clause in the note regarding personal liability of "the Owner," i.e., Winterset:

> Except as provided by a guaranty being furnished by Stanley R. Fimberg and Thomas R. Teague, notwithstanding anything to the contrary provided elsewhere in this Note ... [the Lender] hereby agrees that the payment of this Note shall be enforced solely from the liens, security interests and remedies provided for in the Financing Documents and from the Development and no deficiency or personal judgment, after applying the net proceeds of foreclosure or judicial sale of the Development shall ever be asserted against the Owner.

The FDIC cannot impose liability on Fimberg as guarantor of the note because his guaranty expired by its own terms before Winterset fell behind in its payments. Fimberg contends that the clause laid out above confines the FDIC to post-default recovery of the loan from foreclosure or judicial sale of the apartment complex and it prevents the FDIC from seeking post-default payments from Winterset.

■ In the same paragraph of the note, however, an additional clause states that:

> Notwithstanding any of the foregoing, this paragraph shall not be applicable and Owner shall be personally liable for the payment of the Note ... to the extent of the amount of any rents or other income from security for this Note which comes into the possession of Owner (or any of them) and which is not paid to Lender after default in the payment of this Note ... and after the holder of this Note has given notice of default and specified in such notice that such holder exercises its right to receive such rents or other income under any rental assignment securing this Note.

This clause appears aimed at preventing Winterset from syphoning profits from the property and then refusing to pay the note holder—the very situation which the FDIC alleges occurred in the present case. The FDIC fulfilled the notice requirements of this provision on May 22, 1991.

■ Fimberg contends that his affidavit, attached to his response to the motion for summary judgment, establishes that a genuine issue of material fact exists on this issue. In his affidavit, Fimberg insisted that the parties who drafted the note intended for him to be personally liable only through his guaranty. This contention runs into two problems: First, the note is not ambiguous and Fimberg's affidavit constitutes impermissible parol evidence. See *Rosemont Enterprises, Inc. v. Lummis*, 596 S.W.2d 916, 924 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ) (affidavits that violate the parol evidence rule are not competent summary judgment evidence). Second, the FDIC did not sue Fimberg for payment on the note; it sued him for the net profits from the property which were taken by the Winterset partners when they should have been paid to the FDIC under the terms of the note. This is the situation contemplated by the second clause set forth above. As general partner of the Winterset partnership, Fimberg is liable for the partnership's obligations. See TEX.REV.CIV.STAT.ANN. art. 6132a–1, § 4.03 (Vernon Supp.1994).

The FDIC has established, as a matter of law, that Fimberg was liable for the debt of Winterset. This point of error is overruled.

## THE BANKRUPTCY REORGANIZATION AGREEMENT

Fimberg next contends that the FDIC agreed to settle the note as a part of the Chapter 11 bankruptcy reorganization proceeding. A plan of reorganization was approved by the bankruptcy court on July 20, 1992. According to paragraph 5.3 of this plan:

> [T]he FDIC shall receive (A) payment in cash on the Effective Date of Five Million Seven Hundred Fifty Thousand Dollars [$5,750,000.00]; and (B) all net operating income generated by Debtor subsequent to the FDIC perfecting its interest in cash collateral, less such amounts as are required to be paid to [various tax claims].
>
> Such payments shall be **in full satisfaction and compromise of any and all claims owing to the FDIC under any obligation of Debtor, or arising out of Debtor's ownership or operation of the Property.** In addition, the FDIC shall waive and release any and all claims against the estate of the Debtor, and any limited or general partners of Debtor, including any pending or threatened litigation against any limited or general partner of Debtor and the principals thereof ... related to the FDIC indebtedness and the Property.

(Emphasis added.) Fimberg contends that this paragraph precludes the FDIC from pursuing the present litigation against Fimberg as general partner of Winterset. The plan further states in paragraph 15.4 that:

> Unless a recourse obligation is expressly created in the Plan, no person ... other than the Debtor, including any partner ... shall have any liability to any holder of a Claim or Equity Interest or for payment of any amounts owed by the Debtor under the Plan, or pursuant to any note or security issued by the Debtor, in the past, now, or in the future....

■ On November 12, 1992, the bankruptcy court signed an order confirming that substantial consummation of the plan had occurred and the Winterset assets were in the reorganized debtor. A confirmed plan acts as a binding contract and is res judicata to all issues even if it is not consummated. *In re Laing,* 146 B.R. 482 (Bankr.N.D.Okl. 1992).

The FDIC points to a letter agreement, sent by the attorney representing Winterset to the FDIC, that the FDIC contends allowed it to foreclose on the property and pursue the present litigation if Winterset failed to pay the $5,750,000 and the net operating income produced from the property from the time that Winterset stopped paying on the note. Fimberg admitted in his deposition that the necessary payments under the bankruptcy reorganization plan had not been made, and Valerius confirmed this in her affidavit. The FDIC contends that Winterset's failure to make the payments allows the FDIC to sue Fimberg as general partner.

The reorganization plan refers to the letter agreement in paragraph 1.29, and the agreement was attached to the plan as an exhibit thereto. Under paragraph 15.2, all exhibits attached to the plan are to be considered a part of the entire agreement between the parties. Paragraph 12.4 allows for the retention of claims against the general partner of the debtor by amendment to the plan. Additionally, another instrument, the bankruptcy court's order authorizing Winterset to make limited use of the cash collateral, states that the plan incorporated the letter agreement.

■ A confirmed plan of reorganization is binding on all parties and must be enforced as written. *In re American Properties, Inc.,* 30 B.R. 239 (Bankr.D.Kan.1983). The bankruptcy reorganization plan does not bar the FDIC's suit against Fimberg because the letter agreement expressly allowed the FDIC to pursue the litigation, and this agreement is a part of the plan. Fimberg's point of error is overruled.

## NEGOTIABILITY

■ During oral argument, Fimberg's counsel raised, for the first time, the question of whether the promissory note involved in this case is nonnegotiable. Fimberg has waived any argument regarding the negotia-

bility of the note by not raising it before the trial court. *See* Tex.R.Civ.P. 166a (issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal).

Based on the foregoing reasons, we find that the trial court did not err in granting summary judgment favoring the FDIC. Accordingly, the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

In his motion for rehearing, Fimberg contends that the letter agreement dated April 23, 1992, and contained in the record before this court was never attached to the plan of reorganization. He further contends that there is no evidence that the agreement in the record is the agreement referred to in paragraph 1.29 of the plan.

Paragraph 1.29 states that an agreement between the parties dated April 23, 1992, was attached to the plan. During his deposition, Fimberg was asked whether the agreement, now in the record before this court as an exhibit attached to his deposition, was the agreement referred to in paragraph 1.29, and he replied "Yes." Fimberg was also asked whether he had any reason to dispute the accuracy of the statement made in paragraph 1.29, and he replied "No." Nothing in the record indicated that paragraph 1.29 or Fimberg's deposition answers were inaccurate regarding the attachment of the agreement as an exhibit to the plan.

The motion for rehearing is overruled.