Kathleen **CHURCH** and Robert **Church,** Appellants,

v.

**ORTHO DIAGNOSTIC SYSTEMS, INC.,** Previously Known as Ortho Diagnostics, Inc., Appellee.

No. 13–84–144–CV.

Court of Appeals of Texas, Corpus Christi.

March 28, 1985.

Rehearing Denied May 2, 1985.

James B. Ragan, Latham & Moss, Corpus Christi, for appellants.

Richard Josephson, Baker & Botts, Houston, for appellee.

Before NYE, C.J., SEERDEN and KENNEDY, JJ.

## OPINION

SEERDEN, Justice.

This is an appeal from the granting of a summary judgment.

Appellants brought suit for damages which they allege resulted from the wrong-

ful injury and death of their newborn child as well as for the personal injuries allegedly inflicted upon Kathleen Church during her pregnancy with such child.

Appellee is a manufacturer of a drug called RhoGAM. This is a drug given to counteract certain effects of a person having Rh negative blood being exposed to Rh positive blood.[1]

In July 1976, Kathleen Church gave birth to her first child. She had Rh negative blood and, because her baby had Rh positive blood, it was apparent that she had come in contact with blood of the positive Rh blood factor. She was not given the drug RhoGAM at the time of birth of the child. The drug was available in De Tar Hospital, where she delivered her child, and her doctor, Michael Burditt, M.D., did not administer the drug to her. He relied on the instructions sold with the drug in refusing to administer it to her. The instructions stated that RhoGAM should not be given to a person with another condition diagnosed in Kathleen Church. It was later determined that this diagnosis was in error.[2]

In 1978, Kathleen Church became pregnant again. Because of the complicating Rh factor, this was a difficult pregnancy. In December 1978, an Rh positive girl was born who died several days after delivery. This lawsuit was filed on March 25, 1982.

Appellants contend that had Kathleen Church been given RhoGAM in July 1976, it would have prevented the difficulties she had with her second pregnancy and the girl born as a result would not have died.

In their Second Amended Petition, appellants contend that their damages were the result of:

1) breaches of express and implied warranties concerning the use and non-use of RhoGAM;

2) negligence in the publication of its literature concerning directions for the use of its product in improperly investigating the effects of its product and in wrongfully informing consumers that the product should not be used in certain instances;

3) improper packaging, and creating an unreasonably dangerous product due to the absence of proper instructions as to use, thus creating strict liability in tort, and, finally;

4) violations of the Texas Business and Commerce Code, Sec. 17.46 commonly known as the Deceptive Trade Practices Act, and that appellants were consumers under such act.

Appellee, both in its original answer and motion for summary judgment denied that appellant had stated a cause of action and further asserted that any claims appellant might have had were barred by the Texas Two-Year Statute of Limitations.

Appellants' first point of error contends that appellant did state a cause of action for breach of warranty and such claim was not barred by the statute of limitations. Both in its brief in support of motion for summary judgment and before this Court, appellees contend that appellant never had any contact with its product RhoGAM and therefore no warranty, express or implied, was extended to them.

Appellants point out in their brief that no Texas case has required that a party have direct contact with a defective product in order to make an assertion of breach of an implied warranty. They reason that the abolition of privity of contract as a necessity for a personal injury action based on

1. The record reflects that persons who have Rh negative blood may be exposed to Rh positive blood without suffering any visible effects. However, an Rh negative woman who has been exposed to Rh positive blood (for example, during a blood transfusion, pregnancy, abortion or delivery) stands an increased risk that any children born to her subsequent to the exposure will suffer from certain diseases which may be fatal. Generally, when an Rh negative woman gives birth to an Rh positive child, the woman is given RhoGAM in an effort to protect any subsequent children.

2. Neither the physician who made the diagnosis nor the hospital in which it was made are parties to this suit.

violations of U.C.C. warranties as was done in *Garcia v. Texas Instruments*, 610 S.W.2d 456 (Tex.1980), when taken together with the decisions allowing recovery for mental anguish when there is no direct contact, *see Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983), illustrate that no contact with the product is required.

■ We cannot agree with appellants' rationale. A review of the Texas U.C.C. provisions relating to warranties, as well as the common meaning given to the term shows that "warranty" contemplates that a sale or contract has been made and the seller, to induce the sale, undertakes to vouch for the condition, quality, quantity, or title of the thing sold. *See* TEX.BUS & COM.CODE ANN. § 2.313–2.318 (Tex.UCC) (Vernon 1968); 50 Tex.Jur.2d *Sales* § 235 (1969); Black's Law Dictionary 1423–1424 (5th ed. 1979). Thus, there must be a sale to someone before a warranty is created. *Garcia*, 610 S.W.2d 456, simply holds that where a warranty arises through a sale, a cause of action may arise in favor of someone not privy to the sale.

■ Likewise, those cases cited by appellants which allow recovery for mental anguish where there was no physical contact are not applicable. They deal with specific elements of recoverable damages for causes of actions already created and say nothing about the creation of such cause of action. *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983); *General Motors Corp. v. Grizzle*, 642 S.W.2d 837 (Tex.App. —Waco 1982, writ dism'd); *Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ); *Dave Snelling Lincoln-Mercury v. Simon*, 508 S.W.2d 923 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). We hold that no cause of action is created for breach of warranty, where the action complained of is motivated by not buying, using or coming in contact with the product. It follows, therefore, that we must also reject appellants' contention that the fact that the product was available in the hospital and that the hospital had purchased RhoGAM is sufficient to extend the

warranty to appellant. Appellants' only connection, if any, with the product, was that she didn't use it. Appellants' first point of error is overruled.

■ In point of error number four, appellants contend it was error to grant a summary judgment because they were consumers under the Texas Deceptive Trade Practices Act, TEX.BUS. & COM.CODE ANN. § 17.45 (Vernon Supp.1985). There are no findings of fact or conclusions of law filed with the record and no indication that the trial court considered whether or not the appellees were consumers under the Texas Deceptive Trade Practices Act. TEX.BUS. & COM.CODE ANN. § 17.50, sets forth the circumstances in which a consumer can maintain an action under the Texas Deceptive Trade Practices Act. Appellants make no attempt to show that their damages were produced by any of the circumstances listed in such section. After reviewing the pleadings, the summary judgment evidence and the provisions of the Texas Deceptive Trade Practices Act, we hold that the summary judgment was correct whether or not appellees are consumers. The fourth point of error is overruled.

Points of error two and five relate to the statute of limitations concerning appellants' claims of breach of warranty and violation of the Deceptive Trade Practices Act. Since we hold neither of these claims is valid, it is not necessary to consider the matters concerning limitation.

In their third point of error, appellants' claim their tort action was not barred by limitations.

■ Under appellants' theory of the case, Kathleen Church requested and should have been given RhoGAM in July 1976. The second child of appellants was born and died in December 1978. This would have been the latest date that appellants, under any theory, could claim as a date of discovery that the drug should have been given. Suit was not filed until March 25, 1982. A suit to recover damages in a tort-based case must be brought within two

years of the date on which the cause of action accrued. TEX.REV.CIV.STAT. ANN. art. 5526 (Vernon Supp.1985). Clearly this was not done. Appellants claim that since they asserted a breach of warranty in their original petition within the limitation period for such a cause of action, they can later amend and validate their claim in tort. They cite us to TEX.REV.CIV.STAT. ANN. art. 5539b (Vernon 1958), which provides that when a pleading embracing a claim is filed within the proper limitation time, no subsequent amendment or supplement setting up new facts, grounds of liability, or defense shall be subject to a plea of limitation. Without commenting on when the limitation period in a breach of warranty action begins, we hold that for the statement of a new cause of action in an amended pleading to come within the provisions of this statute, the nature of the original claim must have had some validity.

While the tort claim asserted by appellants arose out of the same transaction as the breach of warranty claim, the rule announced in *Leonard v. Texaco, Inc.*, 422 S.W.2d 160 (Tex.1967), which holds that the test of the applicability of Art. 5539b is whether the claims asserted arose out of the same transaction, is not applicable in this case. Here, as we have stated above, the breach of warranty claim asserted by appellants did not state a' cause of action. Their cause of action in tort was barred at the time of filing their original petition. We hold that a cause of action barred by limitation cannot be revived by filing a pleading stating an invalid cause of action and thereafter amending to include the barred cause of action. Appellants' third point of error is overruled.

Finally in their sixth point of error, appellants argue that the trial court could not grant a summary judgment on the basis that their petition failed to state a cause of action. They cite *Smith v. University of Texas*, 664 S.W.2d 180 (Tex.App.—Austin 1984, writ ref'd n.r.e.), as authority for this proposition. The *Smith* case is distinguishable from this case. In *Smith*, the Court of Appeals held that there were genuine issues of fact presented in the summary judgment proof and that the non-movant should have been given the opportunity to amend his pleadings. No such situation exists here.

The function of a summary judgment proceeding is to eliminate patently unmeritorious claims and untenable defenses and to avoid delays of trial where there are no genuine issues of fact. *In Re Price's Estate*, 375 S.W.2d 900 (Tex.1964); *Whiddon v. Metni*, 650 S.W.2d 904 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). The trial court committed no error in granting the summary judgment. Point of error number six is overruled.

The judgment of the trial court is AFFIRMED.

Opinion ordered published.