**Affirmed in part and Reversed and Remanded in part Opinion filed October 4, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00120-CV

---

## MISSION GROVE, L.P., Appellant

## V.

## DARREN HALL, Appellee

---

### On Appeal from the 268th District Court
### Fort Bend County, Texas
### Trial Court Cause No. 10-DCV-179490

---

## O P I N I O N

Appellant Mission Grove, L.P. appeals the trial court's orders granting summary judgment in favor of appellee Darren Hall on Mission Grove's claims for breach of contract, fraud, and promissory estoppel. As to the breach of contract claim, we affirm the trial court's order granting summary judgment in favor of Hall. As to the fraud and promissory estoppel claims, we reverse the trial court's

order granting summary judgment in favor of Hall and we remand to the trial court for further proceedings in accordance with this opinion.

## BACKGROUND AND PROCEDURAL HISTORY

Mission Grove, as owner and developer of the Lakes of Mission Grove subdivision, entered into a contract with Texas Classic Homes, L.P.,[1] (Texas Classic) for Texas Classic to be the approved builder for the subdivision. Hall signed the contract on behalf of Texas Classic. The signature page of the contract was executed as follows:

BUILDER:

Texas Classic Homes [Name of Builder],

By: _Darren Hall, President_ [Signature line]

Printed Name: Darren Hall
Title: President
Address: 5529 FM 359 Suite B
Richmond, Tx 77469

Paragraph 11 of the contract at issue in this case provides in its entirety:

> Builder will provide to Developer complete and accurate information related to the contract amount and draw status in order to verify the amounts due under this agreement including, but not limited to the Contract with Customer, the HUD-1 and change order invoices. The obligations under this agreement are also a personal obligation of the builder representative signing below.

---

[1] Texas Classic Homes LP is erroneously identified in the contract as "Texas Classic Homes Inc." The error is not material to the issues raised in this appeal.

Texas Classic failed to perform under the agreement and filed for bankruptcy. Thereafter, Mission Grove filed a breach of contract claim against Hall, personally, for failure to pay or perform as agreed. Mission Grove alleged that such failure to perform occurred beginning in September of 2006. Hall filed his first motion for summary judgment, asserting that he was not a party to the contract because he had not signed the contract in his individual capacity.

More than four years after filing its original petition, Mission Grove filed an amended original petition to include claims against Hall for promissory estoppel, fraud and negligent misrepresentation. Hall then filed a second motion for summary judgment on Mission Grove's remaining claims, asserting that the four-year statute of limitations had expired. Mission Grove responded, contending that the claims were timely under the relation-back doctrine. The trial court granted both motions for summary judgment. Mission Grove timely filed this appeal.

### ISSUES PRESENTED

Mission Grove challenges the trial court's summary judgment ruling in favor of Hall on both the breach of contract claim and the fraud and promissory estoppel claims.[2] In its first issue, Mission Grove asserts that both the contract between the parties and the parties' pre-contract negotiations unambiguously make Hall personally liable for his company's obligations under the agreement and, therefore, summary judgment for Hall on the breach of contract claim is error. In its second issue, Mission Grove asserts that although the fraud and promissory estoppel

---

[2] Mission Grove originally brought a claim for negligent misrepresentation along with its fraud and promissory estoppel claims. The negligent misrepresentation claim was included in the claims for which Hall moved for summary judgment in the trial court. Mission Grove does not challenge the trial court's ruling on the negligent misrepresentation claim and it is not before this court.

3

claims were filed well beyond the limitations period, those claims are not time-barred because of the relation-back doctrine.

## STANDARD OF REVIEW

We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

In a traditional motion for summary judgment, the movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Once a movant establishes a right to summary judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996); *Williams v. Bell*, 402 S.W.3d 28, 35 (Tex. App.—Houston [14th Dist.] 2013 no pet.).

Summary judgment evidence raises a genuine issue of fact, if in light of the evidence, reasonable and fair-minded jurors could differ in their conclusions. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). However, for summary judgment evidence to be considered, it must contain facts and be presented in a form that would be admissible at trial. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (per curiam); *In re Estate of Guerrero*, 465 S.W.3d 693, 706 (Tex. App.—Houston [14th Dist.] 2015, pet. filed); *see also* Tex. R. Civ. P. 166a(f) (requiring that supporting and

4

opposing affidavits in summary judgment proceedings "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein").

**APPLICABLE LAW AND ANALYSIS**

## I.     Breach of Contract

Mission Grove first argues that the trial court erred in granting summary judgment in favor of Hall. Specifically, Mission Grove asserts that the unambiguous language of the contract makes it clear that Hall was personally liable for the obligations of Texas Classic. Additionally, Mission Grove asserts that the summary judgment evidence reflects that the parties discussed Hall's personal responsibility prior to the execution of the contract and thus raised a genuine issue of material fact regarding the parties' intentions.

Hall moved for summary judgment on the ground that he was not a party to the contract because he signed the contract only in a representative capacity. The trial court granted Hall's motion.

To prevail on his traditional motion for summary judgment, Hall was required to conclusively negate an element of Mission Grove's breach of contract claim or prove all elements of an affirmative defense. *See Frost Nat'l Bank*, 315 S.W.3d at 508. The elements of a breach of contract claim are: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). At issue here is element one, a contract between Mission Grove and Hall.

### A.    Hall is not primarily liable as a party to the contract.

In the first paragraph of the contract, the parties are expressly identified as Mission Grove L.P. ("Developer") and Texas Classic Homes, Inc. ("Builder"). Thereafter, Texas Classic is referred to as "Builder." Hall's name does not appear in the recitation of the parties. As set forth above, Texas Classic Homes is written in the space identified as "Name of Builder." On the signature line, Hall's signature includes the word "President." Then, Hall's printed name appears in the next line and the word "President" again appears on the line for "title."

Hall acknowledges that he signed the contract, but argues that he did so only in a representative capacity as the president of Texas Classic and that he did not become a party to the contract. "As a general rule, a suit for breach of contract may not be maintained against a person who is not a party to the contract, particularly a non-party who is assigned duties by the terms of the contract." *Bernard Johnson, Inc. v. Cont'l Constructors, Inc.*, 630 S.W.2d 365, 369 (Tex. App.—Austin 1982, writ ref'd n.r.e.) (citing *Jones v. George*, 61 Tex. 345, 364 (1884); *Carruth v. Valley Ready-Mix Concrete Co.*, 221 S.W.2d 584 (Tex. App.—Eastland 1949, writ ref'd)). It is "axiomatic … that a contract between other parties cannot create an obligation or duty on a non-contracting party, which non-contracting party was a stranger to the basic, underlying construction contract." *City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 129 (Tex. App.—Beaumont 1993, writ denied) (citing *Bernard Johnson, Inc.*, 630 S.W.2d at 369). In addition, Texas Classic is unambiguously identified within the contract as the principal. *See A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 435 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (holding that a person making or purporting to make a contract with another as an agent for a disclosed principal does not become a party to the contract, unless the parties have otherwise agreed) (citing *Anderson v. Smith*, 398

S.W.2d 635 (Tex. App.—Dallas 1965, no writ); Restatement (Second) of Agency § 320 (1957)).

Mission Grove urges, in response, that this contract falls into the exception for signatures in a representative capacity. More specifically, Mission Grove urges that paragraph 11 signals the intent of the parties that Hall, too, would become a party to the contract. Paragraph 11 of the contract provides:

> Builder will provide to Developer complete and accurate information related to the contract amount and draw status in order to verify the amounts due under this agreement, including, but not limited to the Contract with the Customer, the HUD-1 and change order invoices. **The obligations under this agreement are also the personal obligations of the builder representative signing below.**
> (emphasis added)

Despite the general rule that an agent does not become a party to a contract executed in a representative capacity for a disclosed principal, an agent may nonetheless expressly agree to be bound. *See Neel v. Tenet HealthSystem Hosps. Dallas, Inc.*, 378 S.W.3d 597, 604–05 (Tex. App.—Dallas 2012, pet. denied). We must therefore determine whether Hall expressly agreed to be bound to the subject contract.

In construing the contract, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the written instrument. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). We presume that the contracting parties intend every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). A contract should be construed by determining how the reasonable person "would

have used and understood such language, considering the circumstances surrounding its negotiation and keeping in mind the purposes intended to be accomplished by the parties when entering into the contract." *Manzo v. Ford*, 731 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1987, no writ). As such, "[n]o single provision taken alone will be given controlling effect." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006).

We first note that the sentence upon which Mission Grove relies for Hall's "express agreement to be bound" does not contain Hall's name at all: "The obligations under this agreement are also the personal obligations of <u>the builder representative signing below</u>." Thus, the sentence reflects no agreement between Mission Grove and Hall. In other words, under Mission Grove's argument, the "express agreement to be bound" would apply to whoever signed the agreement on behalf of Texas Classic, not just Hall. In fact, the sentence belies Mission Grove's argument because it refers solely to one signing "on behalf of" or in a representative capacity for the company. The sentence can be harmonized with a signature in a representative capacity because corporations must necessarily act through individuals; the individual signing a contract in a representative capacity always "represents that the corporation intends to perform the contract." *JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 460 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Had Hall's name been referenced in the personal-obligation sentence, the question presented would be much closer, but even one analogous decision from our sister court places such signatory liability in doubt. *See, e.g.*, *Prent v. rJET, L.L.C.*, No. 01-14-00408-CV, 2015 WL 1020207, at *2–4 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.). In *Prent*, for example, the contract identified the parties as rJET and Infinitus Aviation. *Id.* at *3. Denise Prent

executed the agreement as president of Infinitus. *Id*. However, within the body of the contract, Prent was once identified as a Lessee, along with the statement certifying, "I am responsible for the operational contract of the aircraft." *Id*. The First Court of Appeals determined that "construing the lease as a whole, . . . it is not ambiguous and Prent executed it in her representative capacity on behalf of Infinitus." *Id*. at *4. Unlike the Texas Classic contract before us, the Infinitus contract actually contained some language suggesting a promise by Prent. Hall made no promises within this contract.

Mission Grove also contends that the summary judgment evidence submitted—the affidavit of Showalter—raises a genuine issue of material fact as to the parties' intentions about whether Hall was a party to the contract. In his affidavit, Showalter states that the parties discussed Hall's personal obligation before executing the agreement, and Hall expressed understanding and acceptance of that obligation and promised to fulfill personally the obligations of Texas Classic under the agreement. Showalter also states that Mission Grove relied on these promises when entering into the agreement. Thus, Mission Grove contends that we should ascertain the parties' intentions from this parol agreement, rather than from the express terms of the contract.

For this evidence to be considered, however, it must contain facts and be presented in a form that would be admissible at trial. *See Longoria*, 938 S.W.2d at 30. When a written instrument is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the construction and meaning thereof is question of law for the court to determine. *See R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980); *Universal C. I. T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951); *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no

9

pet.) (citing *Dedier v. Grossman*, 454 S.W.2d 231, 234 (Tex. Civ. App.—Dallas 1970, writ ref'd n.r.e.)). A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). In construing a contract, the court seeks to "ascertain the true intentions of the parties as expressed *in the instrument.*" *Id.* (emphasis added). In other words, the "intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written." *Calpine Producer Servs.*, 169 S.W.3d at 787 (quoting *Parts Indus. Corp. v. A.V.A. Servs., Inc.*, 104 S.W.3d 671, 678 (Tex. App.—Corpus Christi 2003, no pet.)). Additionally, the parties' intent is to be ascertained from the instrument as a whole, not from isolated parts thereof; the court will not inquire into the subjective intent of the contracting parties. *See id.; Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (per curiam); *Burrus Mills, Inc. v. Hein*, 378 S.W.2d 85, 88 (Tex. Civ. App.—Dallas 1964, writ dism'd); *Ervay, Inc. v. Wood*, 373 S.W.2d 380, 384 (Tex. Civ. App.—Dallas 1963, writ ref'd n.r.e.).

We have concluded above that the agreement unambiguously expresses the parties' intent that Mission Grove and Texas Class are the parties to the contract and that Hall executed the agreement in his representative capacity. Therefore, Mission Grove's extraneous evidence may not be admitted to ascertain the parties' intent. *See Fimberg v. F.D.I.C.*, 880 S.W.2d 83, 86 (Tex. App.—Texarkana 1994, writ denied) (holding that appellant's affidavit contradicting plain language of unambiguous promissory note constituted impermissible parol evidence); *Rosemont Enters., Inc. v. Lummis*, 596 S.W.2d 916, 923–24 (Tex. App.—Houston [14th Dist.] 1980, no writ) (holding that affidavit contradicting express provisions of note was not competent summary judgment evidence). Consequently, Mission

Grove's extraneous summary judgment evidence did not serve to raise a genuine issue of material fact as would preclude summary judgment. *See Fimberg*, 880 S.W.2d at 86; *Lummis*, 596 S.W.2d at 924; *see also Dean A. Smith Sales, Inc. v. Metal Sys., Inc.*, 397 S.W.3d 305, 308 (Tex. App.—Dallas 2013, pet. denied) (holding impermissible parol evidence is not competent summary judgment evidence).

### B. Hall is not liable secondarily as a guarantor of Texas Classic's contract.

In the alternative, Mission Grove argues that Hall personally guaranteed his company's performance and that without this personal guarantee from Hall, Mission Grove would not have entered into the contract. "A guaranty agreement creates a secondary obligation whereby the guarantor promises to be responsible for the debt of another and may be called upon to perform if the primary obligor fails to perform." *Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 205 (Tex. App.—Houston [14th Dist.] 2012, no pet.). For a guaranty to be enforceable, it must evidence, with reasonable clearness, "an intent on the part of a party to become liable on an obligation in case of default by the primary obligator." *Block v. Aube*, 718 S.W.2d 914, 915 (Tex. App.—Beaumont 1986, no writ) (citing *Taylor v. First State Bank*, 178 S.W. 35 (Tex. Civ. App.—Fort Worth 1915, no writ)).

To show that Hall personally guaranteed the performance of Texas Classic, the agreement must clearly evidence Hall's intent to become personally liable for the obligations of Texas Classic under the agreement if Texas Classic defaulted. Mission Grove asserts that Texas courts have had little difficulty holding an owner or officer of a company personally liable for a company obligation and cites several cases in which the court found the owner or officer had personally

guaranteed the obligations of the company. We conclude that Mission Grove's authority for such a broad statement is distinguishable. Most of the cases cited by Mission Grove involve contracts containing specific first-person guarantor language such as "I guarantee." *See, e.g.*, *84 Lumber Co., L.P. v. Powers*, 393 S.W.3d 299, 305 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (holding that language in credit application that "I do unconditionally and irrevocably personally guarantee" the credit account was a personal guarantee by signatory that created both corporate and individual liability); *Taylor-Made Hose, Inc. v. Wilkerson*, 21 S.W.3d 484, 488 (Tex. App.—San Antonio 2000, pet. denied) (determining that the language "[w]e agree to pay," and "I, personally agree to pay" used in the "terms and conditions" section immediately preceding the signature evidenced the signatory's agreement to be personally liable for delinquent amounts on the account).

The contract at issue has no such first-person language. The signature line and agreement in this case use only entity-specific terms and do not evidence an intent that Hall's signature was made in an individual capacity. *See First ATM, Inc. v. Onedoz, Inc.*, No. 03-08-00286-CV, 2009 WL 349164, at *4 (Tex. App.—Austin Feb. 13, 2009, no pet.) (mem. op.) (holding that the use of entity-specific terms in conjunction with a lack of first person statements in the agreement evidenced that any assent by the company's owner and president through his signature to the statement the "individual executing the contract is personally liable" was made only in a representative capacity). Thus, these cases are distinguishable from the case before this court.

Mission Grove's other authority is similarly distinguishable for its construction of explicit language that unambiguously evidenced the signatory's specific intent to be the personal guarantor for the debts or obligations of the

company under the agreement in an individual capacity. *See Neel*, 378 S.W.3d at 604 (holding that when individuals signed a lease as "Tenants," the additional language that "[e]ach and every person, . . . comprising Tenant . . . shall be jointly and severally liable" sufficiently established personal liability for the lease); *see also Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 323 (Tex. App.— El Paso 1995, writ denied) (finding the following language in credit application creates a guarantee: "We fully understand your credit terms and agree to the proper payment in consideration of extended credit. If a corporation, the undersigned personally guarantees the payment of this account in his individual capacity.")

The contract at issue contains no such explicit guarantee. The word "guaranty" does not appear in the contract. Other than the signature line, Hall's name does not appear in the contract. Even if, for the sake of argument, we substituted Hall's name into the sentence upon which Mission Grove relies and eliminated the reference to Hall's representative capacity, it would suggest primary liability on the contractual obligations, not secondary liability. But, because we must accept the contract as written by the parties, and construe it as a whole to give effect to the parties' objective intentions, we can find nothing to support a construction for secondary (guarantee) liability. *See Block*, 718 S.W.2d at 915. Therefore, Hall is not secondarily liable on the contract for Texas Classic's obligations.

Having determined that Hall is neither primarily liable on Texas Classic's contract as a party nor secondarily liable on such contract as a guarantor, we conclude the trial court did not err in granting Hall's motion for summary judgment on Mission Grove's breach of contract claim. We overrule Mission Grove's first issue.

## II.    Fraud and Promissory Estoppel Claims

Mission Grove's second issue challenges the trial court's summary judgment ruling in favor of Hall on Mission Grove's fraud and promissory estoppel claims based on the statute of limitations. Mission Grove concedes that it filed the fraud and promissory estoppel claims by amended pleading beyond the four-year limitations period for such claims. However, Mission Grove argues that the claims are not barred by limitations because of Texas Civil Practice and Remedies Code section 16.068, the relation-back doctrine. *See* Tex. Civ. Prac. & Rem. Code § 16.068.

Section 16.068 provides: If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence." Tex. Civ. Prac. & Rem. Code § 16.068. As a remedial statute, section 16.068 should be construed liberally; it is designed to protect litigants from loss of their claims by a plea of limitations. *Milestone Props., Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 116 (Tex. App.—Austin 1993, no writ).

Tracking the language of the statute, Mission Grove asserts that the relation-back doctrine applies because (a) the breach of contract cause of action was not time barred when it was originally filed and (b) that the new causes of action for fraud and promissory estoppel are based on the same transaction or occurrence upon which the breach of contract claim is based. Hall does not disagree on these points. Instead, Hall argues that regardless of whether Mission Grove's fraud and promissory estoppel claims arise from the same transaction or occurrence as the

14

breach of contract claim, to revive the time-barred causes of action using the relation-back doctrine, the breach of contract claim must have been "a valid cause of action." Hall then reasons that because the trial court granted summary judgment on Mission Grove's breach of contract action, that claim was not a valid cause of action.

Hall's one-paragraph argument on the relation-back doctrine and its valid-cause-of-action element relies upon two cases. *See Almazan v. United Servs. Auto. Ass'n*, 840 S.W.2d 776, 778 (Tex. App.—San Antonio 1992, writ denied) ("a cause of action barred by limitation cannot be revived by filing a pleading stating an invalid cause of action and thereafter amending to include the barred cause of action,"); *Church v. Ortho Diagnostic Sys., Inc.*, 694 S.W.2d 552, 556 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.)[3] (holding that for a "statement of a new cause of action in an amended pleading to come within the provisions of this statute, the nature of the original claim must have had some validity")).

Neither case supports Hall's argument; nor do we find a case holding that the relation-back doctrine only applies if the original cause of action is ultimately meritorious. Instead, in *Almazan*, the referenced "invalid cause of action" was a new cause of action that was already time-barred at the time the original claim was filed. *See Almazan*, 840 S.W.2d at 778 (noting that "the legislature did not intend to allow an amended pleading to revive causes of action that were barred when the original pleading was filed"). Hall has not made an *Almazan* argument here. In other words, Hall has never argued that Mission Grove's fraud and promissory estoppel claims were already time-barred at the time Mission Grove filed the breach of contract action. And, in *Church*, when the Court required the initial

---

[3] The *Church* opinion is based upon Tex. Rev. Civ. Stat. Ann. art. 5526 (Vernon Supp. 1985), the predecessor to Tex. Civ. Prac. and Rem. Code § 16.068.

claim to have "some validity," it was looking for a pleading that "state[s] a cause of action." *See Church*, 694 S.W.2d at 556. Hall has not argued that Mission Grove's breach of contract action failed to state a claim.

Consistently, our court has applied "a two-pronged test to determine whether an amended pleading relates back to an earlier pleading for purposes of limitations." *Cooke v. Maxam Tool & Supply, Inc.*, 854 S.W.2d 136, 141 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (noting that the test is (1) the first pleading must not be time-barred when filed, and (2) the amended pleading must not be wholly based on a new, distinct or different transaction or occurrence). We have never considered the substantive merit of claims originally plead to determine the application of the relation-back doctrine. We have never held that the original claim must withstand a summary judgment motion or be persuasive to the fact finder in order to be "valid" for purposes of the relation-back doctrine. We decline to do so here. Under the test Hall suggests, a court could never determine whether the relation-back doctrine applies without necessarily concluding that the initial claims were meritorious, whether challenged by summary judgment or directed verdict or not challenged at all. It is unworkable.

Because Hall did not and does not allege that Mission Grove's breach of contract claim was time-barred at the time of filing or that Mission Grove's new claims are wholly based on a new, distinct or different transaction or occurrence, the relation-back doctrine applies. We therefore reverse the trial court's order granting Hall summary judgment on Mission Grove's fraud and promissory estoppel claims and remand to the trial court for further proceedings.

## CONCLUSION

We affirm the trial court's order granting summary judgment on Mission Grove's breach of contract claim. We reverse the trial court's order granting summary judgment on Mission Grove's fraud and promissory estoppel claims and remand to the trial court for further proceedings.


/s/     Ken Wise
        Justice


Panel consists of Justices Jamison, McCally, and Wise.