**Affirmed and Opinion filed October 16, 2018.**



In The

# Fourteenth Court of Appeals

---

NO. 14-17-00170-CV

---

**OBO, INC., Appellant**

**V.**

**APACHE CORPORATION AND PERMIAN BASIN JOINT VENTURE, LLC, Appellees**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-39006**

---

### O P I N I O N

This appeal of a summary judgment involves claims and counterclaims concerning the interpretation and application of the governing agreements for an oil and gas unit in West Texas. Appellees Apache Corporation and Permian Basin Joint Venture, LLC (PBJV) sued appellant OBO, Inc. for failure to pay unit operating expenses as required under the agreements. OBO counterclaimed against Apache, seeking a declaration that Apache could not act as unit operator because it

was not a working interest owner and asserting among other things that Apache was grossly negligent. In its judgment, the trial court ordered OBO to pay PBJV $195,330.45 in past due expenses and further ordered that OBO take nothing on its counterclaims against Apache.

In its first issue, OBO contends that the trial court erred in granting summary judgment against its request for a declaration that Apache could not act as unit operator because it was not a working interest owner. In its second issue, OBO asserts that the trial court erred in awarding judgment to PBJV because PBJV was not the unit operator, made no affirmative claims, and provided no evidence that it had incurred any expenses. And in its third issue, OBO contends that the trial court erred in granting summary judgment against certain of OBO's counterclaims. Finding no merit in OBO's arguments, we affirm.

## I. Background

OBO owns an 11 percent working interest in the Shafter Lake San Andres Unit in West Texas. PBJV owns 81.4 percent of the working interest in that unit. Under the unit's governing documents, the Unit Agreement and the Unit Operating Agreement, the "Unit Operator" must be a working interest owner. It is undisputed that by 2007, PBJV was designated as Unit Operator. In January 2007, PBJV entered a Contract Services Agreement with Apache, pursuant to which PBJV delegated to Apache certain operator duties.[1] Under the agreement, Apache's services were to be "subject to the reasonable direction of [PBJV]." PBJV also gave Apache a power of attorney, authorizing it to act on PBJV's behalf.[2]

---

[1] At least some evidence in the record indicates that Apache owns a 95% interest in PBJV, although OBO asserts that this relationship is not entirely clear. It is undisputed, however, that PBJV and Apache are separate entities.

[2] Pursuant to the Contract Services Agreement, Apache was to provide PBJV with "certain operations, marketing, land administration, accounting, reservoir engineering and other

2

For several years, part of the services Apache provided included sending Joint Interest Billings (JIBs) to the working interest owners in the unit, including OBO, for their share of operating expenses. OBO declined or failed to pay a number of these JIBS and Apache filed the present lawsuit in July 2015. In its original petition, Apache represented itself to be "the operator"; however, in the second amended petition, PBJV was added as a plaintiff and it was specifically stated that PBJV contracted with Apache to operate the unit. PBJV and Apache further asserted in the second amended petition that OBO breached the unit's governing agreements by failing to pay the past due JIBs.

In OBO's second amended answer and counter-petition, it generally denied the allegations; asserted that Apache lacked standing because it was not a working interest owner and thus could not act as Unit Operator; and raised several counterclaims against Apache, including for declaratory judgment and "gross negligence and willful misconduct."[3] OBO did not assert any claims against PBJV. OBO's declaratory judgment action sought a declaration that Apache could not act as Unit Operator because it was not a working interest owner as required by the unit's governing documents. Specifically, among its requests for relief, OBO sought a declaration that Apache was "an unlawful and unauthorized Unit Operator."

---

services in connection with the Oil & Gas Interests." The agreement further listed the services to be provided in each category, including "billing . . . all working interest owners." The purpose of the power of attorney was to grant Apache "the authority to execute, amend or extend contracts associated with ownership and operation of the Oil & Gas Interests." The power of attorney specifically authorized Apache "to execute and deliver in the name of PBJV any and all agreements, instruments, communications, and any other documentation that Apache deems necessary or advisable in the fulfilment of its obligations under the Contract Services Agreement."

[3] OBO also counterclaimed for trespass, conversion, and breach of contract. The trial court granted summary judgment against those claims, which OBO does not challenge in this appeal.

OBO's claims that it labels as "gross negligence and willful misconduct" were, in essence, contingent on its being unsuccessful in its request for a declaration that Apache cannot be the operator. OBO's counterclaim states: "If the Court determines that Apache was a proper operator of the Unit, Apache was grossly negligent and committed willful misconduct in its failure to operate the Unit as a reasonably prudent operator would." The claims turn in part on the applicability of an exculpatory clause in the Unit Operating Agreement to permit the assessment of damages.[4]

PBJV and Apache filed a joint traditional and no-evidence motion for summary judgment. Along with this motion, appellees presented evidence of OBO's nonpayment of the JIBs. Appellees additionally argued in the motion that, contrary to OBO's assertions, Apache was not serving as Unit Operator in its own right but was conducting operations on behalf of PBJV, pursuant to the Contract Services Agreement and power of attorney, and PBJV was the actual Unit Operator. Appellees further contended that OBO could produce no evidence that Apache had acted with gross negligence or willful misconduct.

In response, OBO argued among other things that the unit governing documents did not permit Apache to act as Unit Operator, the exculpatory clause was inapplicable, and Apache's operation of the unit was grossly negligent. OBO attached to its response a purported expert declaration criticizing Apache's continued operation of nonproductive wells. OBO also filed its own motion for partial summary judgment, requesting the court declare that Apache could not act

---

[4] The exculpatory clause provided that: "Unit Operator shall conduct unit operations in a good and workmanlike manner as would a prudent operator under the same or similar circumstances. . . . Unit Operator shall not be liable to Working Interest Owners for damages, *unless such damages result from its gross negligence or willful misconduct*." (Emphasis added). OBO asserted that Apache breached the contractual duty of conducting operations in a good and workmanlike manner through gross negligence and willful misconduct.

as the Unit Operator.

In its final judgment, the trial court granted what it referred to as PBJV's motion for summary judgment and awarded PBJV $195,330.45. The trial court further denied OBO's motion for partial summary judgment and ordered that it take nothing on its counterclaims against Apache.[5]

## II. Standards of Review

**Summary judgments.** We review a trial court's grant of summary judgment under a de novo standard. *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (per curiam). In a traditional motion for summary judgment, the movant must state specific grounds supporting judgment, and a defendant who conclusively negates at least one essential element of a cause of action is entitled to judgment. Tex. R. Civ. P. 166a(c); *Nall*, 404 S.W.3d at 555. If the movant's motion and summary-judgment evidence conclusively establish a right to judgment as a matter of law, the burden then shifts to the nonmovant to raise a genuine issue of material fact sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

In a no-evidence motion, the movant contends that the nonmovant can produce no evidence supporting one or more essential elements of a claim for which the nonmovant would bear the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014). The trial court must grant a no-evidence motion unless the nonmovant raises a genuine issue of material fact on each challenged element. Tex. R. Civ. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).

---

[5] Although the trial court did not expressly mention Apache in the final judgment, OBO's counterclaims were only against Apache and not PBJV. The final judgment contained express finality language, and Apache does not raise any cross-issues in this appeal concerning its requests for affirmative relief.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

**Agreement construction.** OBO's issues to some extent revolve around the proper construction of the unit's governing documents: the Unit Agreement and the Unit Operating Agreement. The construction of an unambiguous agreement presents a question of law that we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).[6] Our primary concern in interpreting an agreement is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We therefore give terms their plain and ordinary meaning unless the contract indicates that the parties intended a different meaning. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). We examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract, so that none will be rendered meaningless. *J.M. Davidson*, 128 S.W.3d at 229.

### III. Discussion

In its appeal, OBO does not contest its failure to pay the JIBs. Instead, as set forth above, in three issues, OBO contends that the trial court erred in granting summary judgment (1) against its request for a declaration that Apache could not act as Unit Operator because it was not a working interest owner; (2) to PBJV because PBJV was not the unit operator, made no affirmative claims, and provided no evidence that it had incurred any expenses; and (3) against certain of OBO's

---

[6] Neither side here argues that the agreements were ambiguous in any respect, and we have discerned no relevant ambiguity.

6

counterclaims.

## A. Unit Operator Must Be Working Interest Owner

In its first issue, OBO asserts that the governing documents unambiguously mandate that only a working interest owner can be the Unit Operator, and because Apache was not a working interest owner, it could not act as Unit Operator. On that basis, OBO argues that the trial court erred in granting summary judgment against its request for a declaration that Apache could not act as the Unit Operator.

Appellees, however, do not dispute that only a working interest owner can be designated as Unit Operator.[7] Appellees insist instead that Apache was not acting as the Unit Operator but was merely providing operator services pursuant to a contract with the designated Unit Operator, PBJV. Therefore, according to appellees, the trial court did not err in denying OBO's requested declaration because the point was essentially uncontested and would have had no effect on any matter in the lawsuit. Moreover, appellees say, the JIBs submitted by Apache to OBO and the other working interest owners were prepared and submitted on behalf of PBJV.

As a general rule, all contractual duties are delegable. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 596 (Tex. 1992); Restatement (Second) of Contracts § 318 (1981). There are exceptions to this rule, such as for when contractual rights involve certain matters of personal confidence, *see Crim Truck*, 823 S.W.2d at 596, or for when delegation is contrary to public policy or the terms of the contract, *see* Restatement (Second) of Contracts § 318. Here, OBO suggests only that the contract itself prohibited delegation of PBJV's

---

[7] As both OBO and appellees point out, section 1.10 of the Unit Agreement defines "Unit Operator" as "the Working Interest Owner designated by Working Interest Owners under the Unit Operating Agreement to develop and operate the [unit], acting as operator and not as a Working Interest Owner."

duties as operator.

As stated, the unit governing documents required the Unit Operator to be a working interest owner. In its Contract Services Agreement with Apache and attendant power of attorney, PBJV did not name or designate Apache as Unit Operator; it merely contracted with Apache to provide operator services for the unit, i.e., PBJV delegated those contractual duties to Apache. As mentioned above, Under the Contract Services Agreement, Apache's services were to be "subject to the reasonable direction of [PBJV]."

OBO points to two specific sections of the governing documents it argues would be rendered meaningless if the documents are interpreted as allowing delegation of the operator's duties. *See J.M. Davidson*, 128 S.W.3d at 229 (explaining that proper construction of an agreement requires that all provisions be harmonized so that none are rendered meaningless). The first provision OBO cites is part of section 1.10 of the Unit Agreement, which defines "Unit Operator" as "the Working Interest Owner designated by Working Interest Owners under the Unit Operating Agreement to develop and operate the [unit], ***acting as operator*** and not as a Working Interest Owner." (Emphasis added). Although OBO is not specific in its argument, it appears to suggest that the emphasized language means that only the Unit Operator, i.e., PBJV, could perform any operator functions, i.e., "act as operator." There is, however, a more reasonable interpretation of this language.

Reading all provisions of the agreement in harmony, we conclude the phrase "acting as operator" in section 1.10 is used to differentiate actions by the entity designated as Unit Operator while wearing the hat of Unit Operator from its actions while wearing the hat of Working Interest Owner. It is not reasonable to interpret this sparse language as creating a prohibition against the delegation of

8

operator duties, particularly when another, reasonable explanation exists. *See Westwind Expl., Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex. 1985) (explaining that a reasonable interpretation of an agreement is preferred to one which is unreasonable); *Hycarbex, Inc. v. Anglo-Suisse, Inc.*, 927 S.W.2d 103, 108 (Tex. App.—Houston [14th Dist.] 1996, no writ) (same).

OBO additionally asserts that if the governing documents are interpreted as permitting Apache to become Unit Operator, the voting and operator removal language in section 6.2 of the Unit Operating Agreement would be rendered meaningless. Section 6.2 states in relevant part that "Working Interest Owners may remove Unit Operator at any time by the affirmative vote of at least eighty percent (80%) of the voting interest remaining after excluding the voting interest of Unit Operator." OBO states that PBJV could "effectively nullify the provision by voting its 81.4% interest in favor of Apache." But this argument lies on the faulty premise that Apache actually became the Unit Operator by way of its Contract Services Agreement with PBJV and attendant power of attorney. As explained above, it is undisputed that Apache could not and did not become the Unit Operator because it was not a working interest owner. Section 6.1 is unaffected by the delegation of operator duties to Apache and is not rendered meaningless.

OBO does not cite any other specific section of the governing documents as being rendered meaningless by interpreting the governing documents as not prohibiting the delegation of operator duties to Apache. Moreover, no provisions in the governing documents explicitly or implicitly prohibit the delegation of operator duties. Indeed, under section 7.10 of the Unit Operating Agreement, the Unit Operator was permitted, but not required, to "employ its own tools and equipment" in performing operations. This provision suggests that the Unit Operator could delegate the performance of its duties by contracting with a third party, in keeping

with the general rule of law. *See Crim Truck*, 823 S.W.2d at 596; Restatement (Second) of Contracts § 318.

Because Apache was not acting as the Unit Operator but was merely performing operator services pursuant to its contract with PBJV and the unit governing documents do not prohibit such delegation, the trial court did not err in granting summary judgment against OBO's request for a declaration that Apache could not act as the Unit Operator. Accordingly, we overrule OBO's first issue.[8]

**B. PBJV was Unit Operator**

In its second issue, OBO asserts that the trial court erred in granting judgment favoring PBJV because PBJV was not the Unit Operator, asserted no affirmative claims, and presented no evidence that it incurred any damages by OBO's failure to pay the past due JIBs issued by Apache.[9] As mentioned above, in its final judgment, the trial court expressly awarded damages to PBJV and not Apache.

We begin by noting that Apache has not complained in this appeal regarding

---

[8] In its reply brief, OBO asserts that prior to PBJV becoming unit operator, Apache had been both a working interest owner and unit operator. OBO further states that when Apache divested itself of its working interest, and thus was no longer eligible to be unit operator, certain unit operator successor provisions and voting procedures should have been invoked but were ignored. OBO, however, offers no record citations to support these factual assertions beyond general cites to the governing documents, offers no cite where it made this argument in the trial court, and offers no explanation as to how these allegations are relevant to the present appeal. *See* Tex. R. App. P. 38.1(i) (requiring clear and concise argument for the contentions made in a brief with appropriate citations to authorities and the record). Moreover, we typically do not address contentions made for the first time in a reply brief. *See id*. 38.3; *Pochron v. Oleksy*, No. 14-12-00650-CV, 2014 WL 494894, at *5 (Tex. App.—Houston [14th Dist.] Feb. 6, 2014, no pet.) (mem. op.); *Swaab v. Swaab*, 282 S.W.3d 519, 527, n.10 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

[9] The entirety of OBO's substantive argument on this issue comprises just five sentences of its brief.

its omission from the final judgment.[10] Instead, appellees argue that either the trial court intended to award damages to both PBJV and Apache when it referenced only PBJV in the final judgment or, in the alternative, it does not matter that Apache was omitted because Apache was acting only on behalf of PBJV in prosecuting the lawsuit.[11] We agree with the latter contention. As discussed in detail above, PBJV was the designated Unit Operator for the Shafter Lake San Andres Unit, and Apache was involved with the unit only as a contractor providing certain operator services for PBJV pursuant to the Contract Services Agreement and attendant power of attorney. This arrangement is further reflected in appellees' motion for summary judgment, which indicated that Apache was participating only on behalf of PBJV. Moreover, the final judgment also recognizes that the basic breach of contract claim belonged to PBJV as Unit Operator and not Apache, which was a nonparticipant to the unit's governing documents and involved in the case only as a service-provider to PBJV.

OBO is incorrect in arguing that PBJV did not assert any affirmative claims in this case because, in the second amended petition, both PBJV and Apache alleged a breach of contract cause of action and requested actual damages based on the alleged breach. This petition also explained the contractual relationship between PBJV and Apache and the basis for the breach of contract claim. PBJV therefore clearly raised affirmative claims.

OBO also is incorrect in arguing that PBJV presented no evidence that it incurred any damages by OBO's failure to pay the past due JIBs issued by Apache. As explained, Apache submitted the JIBs to OBO and the other working interest

---

[10] *See supra* n.5.

[11] Appellee's first argument rests on the fact that their motion for summary judgment referred to PBJV and Apache collectively as "PBJV." Appellees suggest the trial court carried this nomenclature forward into the final judgment.

owners on behalf of PBJV. Under the Contract Services Agreement, Apache specifically agreed to bill the working interest owners as part of its services to PBJV. The power of attorney specifically authorized Apache "to execute and deliver in the name of PBJV any and all . . . instruments, communications, and any other documentation that Apache deems necessary or advisable in the fulfilment of its obligations under the Contract Services Agreement." Moreover, under section 11.1 of the Unit Operating Agreement, PBJV, as Unit Operator, was obligated to "initially . . . pay all Unit Expense" (including operating costs) and then obtain reimbursement from the working interest owners in proportion to their interest owned. OBO's failure to pay and the amount of the damages were proven by an affidavit from an Apache employee who supervised JIB collections as well as by a spreadsheet that the employee authenticated, amounts of which OBO has not contested. PBJV's summary judgment evidence therefore established that PBJV incurred damages when OBO failed to pay the JIBs that Apache submitted to the working interest owners on PBJV's behalf. Accordingly, we overrule OBO's second issue.

### C. "Gross Negligence" and the Exculpatory Clause apply only to parties to the agreement

In its third issue, OBO asserts that the trial court erred in granting summary judgment against its gross negligence counterclaim against Apache because (1) Apache cannot rely on the exculpatory clause in the Unit Operating Agreement because it was not the Unit Operator, and (2) even if the exculpatory clause applies, OBO raised a material issue of fact regarding whether Apache's conduct was grossly negligent. OBO's arguments on appeal misunderstand or misrepresent the nature of both the exculpatory clause and OBO's own gross negligence claim.

The exculpatory clause appears in Article 7 of the Unit Operating

12

Agreement, which sets forth the "Authorities and Duties of Unit Operator." In relevant part, the clause in section 7.2 provides that: "Unit Operator shall conduct unit operations in a good and workmanlike manner as would a prudent operator under the same or similar circumstances. . . . Unit Operator shall not be liable to Working Interest Owners for damages, unless such damages result from its gross negligence or willful misconduct."

In its brief, OBO urges that "Apache is not entitled to the limitation of liability in the exculpatory clause, because it is not a proper party to the Agreements or the legal operator of the Unit." As explained above, appellees agree that Apache was not the Unit Operator and the evidence supports this conclusion. Therein lies the rub. OBO's breach of contract and gross negligence counterclaims were based on Apache's alleged breaches of the Unit Operating Agreement. OBO's counterclaim stated: "Apache owed a duty to OBO under the Unit Operating Agreement to act as a reasonably prudent operator would."[12] OBO does not explain how it can recover from Apache for alleged breaches of an agreement, or breaches of a duty imposed by an agreement, to which Apache was not a party. *See Mission Grove, L.P. v. Hall*, 503 S.W.3d 546, 552 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("It is 'axiomatic . . . that a contract between other parties cannot create an obligation or duty on a non-contracting party . . . .'" (quoting *City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 129 (Tex. App.—Beaumont 1993, writ denied))); *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 912 (Tex. App.—Dallas 2008, no pet.) ("Privity is an essential element for recovery in any action based on contract . . . .").

OBO has not alleged, either in its petition or in its brief, any duty or duties

___

[12] As discussed above, these counterclaims were also made expressly contingent on Apache being determined by the court to be a proper Unit Operator.

13

Apache may have violated outside of those it alleges were created under the Unit Operating Agreement. OBO specifically has not alleged that Apache committed ordinary negligence. OBO has only asserted that if Apache was the Unit Operator, it breached duties it owed as Unit Operator. *See Reeder v. Wood Cty. Energy, LLC*, 395 S.W.3d 789, 790, 792–97 (Tex. 2012) (addressing "gross negligence" claims pursuant to exculpatory clause in oil and gas joint operating agreement as breach of contract claims). Because Apache was not the Unit Operator, the trial court properly granted summary judgment against OBO's contingent claims for breach of contract and gross negligence. Accordingly, we overrule OBO's third issue.

Finding no merit in any of OBO's arguments, we affirm the trial court's judgment.

/s/ Martha Hill Jamison
  Justice

Panel consists of Justices Boyce, Jamison, and Brown.